No. 22-4642

In The
# United States Court of Appeals
For The Fourth Circuit

---

UNITED STATES OF AMERICA,

Appellee,

v.

RAYMOND DUGAN,

Appellant.

---

Appeal from the United States District Court
for the Southern District of West Virginia
*The Honorable Joseph R. Goodwin, United States District Judge*

---

Brief of Appellee the United States of America

---

WILLIAM S. THOMPSON
United States Attorney

Holly J. Wilson
Assistant United States Attorney
300 Virginia Street, East, Room 4000
Charleston, West Virginia 25301
(304) 345-2200

*Attorneys for the United States of America*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................... iii

INTRODUCTION.............................................................................. 1

STATEMENT OF JURISDICTION ................................................. 2

ISSUES PRESENTED......................................................................... 3

STATEMENT OF THE CASE ......................................................... 4

    A.    A foreign law enforcement agency delivers a tip to United States law enforcement. ........................................................... 4

    B.    HSI obtains a warrant to search Dugan's home........................... 5

    C.    Dugan admits to searching for CSAM, and HSI finds child pornography.................................................................. 8

    D.    Dugan is indicted, and the district court denies his motion to compel and his motion to suppress. ............................................ 8

    E.    The United States supersedes the indictment, and a jury convicts Dugan...................................................................... 12

    F.    The district court orders Dugan to pay restitution to five victims as part of his sentence. ................................................. 13

SUMMARY OF ARGUMENT........................................................ 15

ARGUMENT....................................................................................... 17

    I.    The district court properly denied Dugan's motion to compel. 17

        a.    Standards of Review. ........................................................ 17

i

b.    Dugan was not entitled to discover the information requested in his motion to compel. ................................. 17

II.    The district court properly denied Dugan's motion to suppress ......................................................................... 22

a.    Standard of Review. ........................................................ 23

b.    The affidavit accurately described the tip and provided probable cause to search Dugan's home. ......................... 23

III.    The district court did not abuse its discretion by awarding more than $3,000 each to Jenny, Patty, and April. ............................. 28

CONCLUSION ............................................................................................ 36

## TABLE OF AUTHORITIES

**Cases**                                                          **Pages**

*Bell v. Brockett*, 922 F.3d 502 (4th Cir. 2019) ................................................... 27

*Brady v. Maryland*, 373 U.S. 83 (1963) .............................................8, 17, 18, 22

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................................................ 23

*Paroline v. United States*, 572 U.S. 434 (2014) .......................................29, 30, 35

*Taylor v. Farmer*, 13 F.3d 117 (4th Cir. 1993) ................................................... 24

*United States v. Abu Ali*, 528 F.3d 210 (4th Cir. 2008) ..................................... 21

*United States v. Anderson*, 481 F.2d 685 (4th Cir. 1973) ................................... 19

*United States v. Arce*, 49 F.4th 382 (4th Cir. 2022) ....................................28, 29

*United States v. Armstrong,* 517 U.S. 456 (1996) .........................................18, 22

*United States v. Benoit*, 730 F.3d 280 (3d Cir. 2013) ......................................... 25

*United States v. Bosyk*, 933 F.3d 319 (4th Cir. 2019) ..................................23, 24

*United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012) ................................... 19

*United States v. Caro*, 597 F.3d 608 (4th Cir. 2010) ...........................17, 18, 22

*United States v. Dillard*, 891 F.3d 151 (4th Cir. 2018) ...................................... 30

*United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011) ......................................... 27

*United States v. Gondres-Medrano*, 3 F.4th 708 (4th Cir. 2021) ........................ 25

iii

*United States v. Hodge*, 354 F.3d 305 (4th Cir. 2004) ........................................ 25

*United States v. Hoeffener*, 950 F.3d 1037 (8th Cir. 2020) ......................... 18, 19

*United States v. Hope*, 28 F.4th 487 (4th Cir. 2022) .......................................... 27

*United States v. Legg*, 18 F.3d 240 (4th Cir. 1994) ............................................ 26

*United States v. Leon*, 468 U.S. 897 (1984) .................................................. 11, 26

*United States v. Lewis*, 733 F. App'x 83 (4th Cir. 2018) .................................... 28

*United States v. Mandel*, 914 F.2d 1215 (9th Cir. 1990) ................................... 19

*United States v. Mathurin*, 561 F.3d 170 (3d Cir. 2009) .................................... 25

*United States v. McDaniel*, 631 F.3d 1204 (11th Cir. 2011) ............................. 35

*United States v. Morehouse*, 34 F.4th 381 (4th Cir. 2022) ................................... 1

*United States v. Owens*, 18 F.4th 928 (7th Cir. 2021) ........................................ 19

*United States v. Pulley*, 987 F.3d 370 (4th Cir. 2021) ........................................ 23

*United States v. Santiago*, 46 F.3d 885 (9th Cir. 1995) ...................................... 19

*United States v. Soto-Zuniga*, 837 F.3d 992 (9th Cir. 2016) .............................. 19

*United States v. Ventresca*, 380 U.S. 102 (1965) ................................................ 25

*United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006) .......................................... 25

*United States v. Zackary Ellis Sanders*, No. 22-4242 .............................................. 2

**Statutes**

18 U.S.C. § 2252A(a)(5)(B) ........................................................... 1, 8, 12

18 U.S.C. § 2252A(a)(5)(B)(b)(2) ..................................................... 8, 12

18 U.S.C. § 2259 ............................................................................. 29

18 U.S.C. § 2259(b)(1)(c)(2) ............................................................ 30

18 U.S.C. § 2259(b)(2)(B) ............................................................... 30

18 U.S.C. § 3231 .............................................................................. 2

18 U.S.C. § 3664(e) ......................................................................... 30

18 U.S.C. § 3742 .............................................................................. 2

28 U.S.C. § 1291 .............................................................................. 2

**Other**

U.S. Const. Amend. IV .................................................................... 23

Fed. R. Crim. P. 16(a)(1)(E) ...............................................9, 17, 18, 22

U.S. Sent'g Comm'n, *Report to Congress: Federal Child Pornography Offenses* 112

(December 2012) ............................................................................. 35

**INTRODUCTION**

Based on a tip from a reliable foreign law enforcement agency, the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security's Homeland Security Investigations ("HSI") traced an IP address that had accessed child sexual abuse and exploitation material ("CSAM")[1] on the dark web to Raymond Dugan's home.[2] HSI obtained a search warrant for the house, and upon execution, HSI found a stash of CSAM on Dugan's laptop hard drive. During the search, Dugan admitted to investigators that he had used the dark web and had accessed CSAM.

Dugan was charged with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Thereafter, he challenged the validity of the search warrant for lack of probable cause, and he moved to compel information related to the foreign law enforcement agency's investigation and relation to United States authorities. The district court denied his motion to suppress and his motion to compel. A grand jury later returned a superseding indictment charging Dugan with accessing with intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The case

---

[1] While federal statutes use the term "child pornography," "child sexual abuse material" or "CSAM" more accurately reflects its content. "Child sexual abuse material" and "CSAM" are used herein when not referring to statutory text. *See United States v. Morehouse*, 34 F.4th 381, 384 n.1 (4th Cir. 2022).

[2] The identity of the foreign law enforcement agency and the target website are known to both the United States and Dugan. *See* JA513-JA514.

1

proceeded to trial, and Dugan was convicted. As part of his sentence, the district court

ordered Dugan to pay a total of $22,000 in restitution to five identified victims.

Here, Dugan attacks the denial of his motion to compel and motion to

suppress. He also challenges a portion of the restitution order. His arguments all fail.

He was not entitled to discover any of the information that he moved to compel. The

warrant was supported by ample evidence to establish probable cause, but even if not,

the good faith exception applied.[3] Further, the district court's restitution order was

well supported and within its broad discretion. This Court should affirm.

## STATEMENT OF JURISDICTION

The district court possessed jurisdiction over this federal criminal case under

18 U.S.C. § 3231. It sentenced Dugan on October 27, 2022, and it entered its written

judgment on that same date. JA312-JA366. Dugan timely filed a notice of appeal on

November 9, 2022. JA367–JA368. This Court has jurisdiction under

28 U.S.C. § 1291 and 18 U.S.C. § 3742.

---

[3] The appellant in a factually similar case, *United States v. Zackary Ellis Sanders*, No. 22-4242, has raised arguments that are substantially the same. Argument has been continued for that case.

## ISSUES PRESENTED

I. **Motion to Compel.** In moving to compel investigative information, Dugan advanced a factually baseless theory that the foreign law enforcement agency hacked his computer. Where Dugan did not provide any evidence to support his suspicion, did the district court properly deny Dugan's motion to compel?

II. **Motion to Suppress.** The affidavit in support of the search warrant relied on a tip from a reliable foreign law enforcement agency with a longstanding history of providing reliable investigative information to United States law enforcement. Did the district court abuse its discretion by finding that probable cause supported the search warrant and that, in the alternative, the good faith exception applied?

III. **Restitution.** Five victims submitted restitution requests documenting their losses and continuing harm from the circulation of images of their abuse. Did the district court abuse its discretion by awarding three victims, based on the information in the requests, more than the statutory minimum amount of restitution?

## STATEMENT OF THE CASE

**A. A foreign law enforcement agency delivers a tip to United States law enforcement.**

In August 2019, ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

JA580-JA581. The target website ████████████████████████

████████████████████████████████████████████████

████ JA578, JA582. Additionally, ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ JA581-JA582.

The foreign law enforcement agency did not disclose the details of its investigation to United States authorities. JA37.

The FBI referred the tip to HSI. JA25, JA54. HSI Special Agent Michael Fleener ("Agent Fleener") took over the investigation. JA28, JA54. In November 2019, HSI

████████████████████████████████████████████████

████████████████████████ JA585-586. ████████████████████████

████████████████████████████ JA586.

4

**B. HSI obtains a warrant to search Dugan's home.**

Based on the foreign law enforcement agency's tip and his own investigation, Agent Fleener applied for and obtained a federal warrant to search Dugan's home. JA622.

The affidavit in support of the search warrant explained ██████████ ████████████████████████████████████████ JA573-JA577. ██

████████████████████████████████████████████████

████████████████████████████ JA575. ████████

████████████████████████████████████████████████

████████████████████████ JA577. ██████████████

JA576.

The affidavit explicitly stated ████████████████████

██ JA578-JA579. ██████████████████████████████

████████████████████████████████████████████████

████████████████████ JA578. Further, the affidavit detailed ██

████████████████████████ JA578-579.

The affidavit also explained ████████████████████

████████████████████████████████ JA582-JA583. ████

5



JA582.

JA583.

JA583.

JA583-584.

JA578.

JA578.

JA584.

JA584.

Additionally, the affidavit detailed ██████████████████████

██████████████████████ JA580-584.  It provided ██████████████

██████████████████████████████████████████████

6

████████████████████████████████████ JA580-JA581. ███

████████████████████████████████████████████

██████████████████████████████████ JA581. In

particular, the affidavit noted ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████ JA580.

The affidavit further stated that the ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ JA582. The affidavit also affirmed that

████████████████████████████████████████████

████████████████████████████████████████████

JA582.

████████████████████████████████████████

████████████████████████████████████████████

7

████████████████████████████████████████ JA622.

████████████████████████ JA623.

### C. Dugan admits to searching for CSAM, and HSI finds child pornography.

On the day the search warrant was executed, Agent Fleener interviewed Dugan. JA30. During the interview, Dugan admitted to using the Tor network to search for and visit multiple child pornography websites on the dark web. JA30, JA75, JA137. Dugan explained that he was curious about child pornography. JA75, JA137.

A forensic analysis of a hard drive seized from Dugan's home office during the execution of the search warrant revealed 1,237 images of child pornography contained on the hard drive. JA75, JA143. The analysis also revealed 1,543 Tor network URLs visited. JA75, JA190.

### D. Dugan is indicted, and the district court denies his motion to compel and his motion to suppress.

On July 29, 2021, a federal grand jury indicted Dugan in a single-count indictment, charging him with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). JA2, JA512-513.

On April 11, 2022, Dugan filed two pretrial motions: a motion to suppress and a motion to compel. JA4, JA434-JA443. Dugan argued in his motion to compel that under Federal Rule of Criminal Procedure 16(a)(1)(E) and *Brady v. Maryland*, 373 U.S.

8

83 (1963), he was entitled to ████████████████████████

████████████████████████████ JA431-433. He sought sweeping discovery

related to ████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████ JA432-JA433.

Dugan argued in his motion to suppress that ████████████████

████████████████████████████████ JA434-

JA443. In his estimation, HSI was ████████████████

█████████ JA437. Dugan also advanced the unsupported theory that ████████

████████████████████████████████

████████████████████████████████

█████ JA441. Additionally, Dugan contended that ████████████████

████████████████████████████████

█████████ JA434-JA443.

9

The United States responded to the motions, arguing that █████████████

███████████████████████████████████████████████████████████████

████████████████ JA512-JA557. It further argued that ████████████████

██████████████████████████████████████ JA533-JA534.

The district court held a pretrial motions hearing on April 29, 2022. JA14.
Agent Fleener testified that he had no reason to doubt the veracity of the tip from the
foreign law enforcement agency. JA36-JA37. He also shared that the foreign law
enforcement agency did not "turn over to the United States the details of its
investigation." JA37. Accordingly, he stated that the United States had nothing
beyond what was already produced to give to Dugan regarding how the IP address was
identified. JA37. Dugan did not present any witnesses or evidence. JA14-JA73.

Dugan argued during the hearing that, based on his understanding of the Tor
network, the foreign law enforcement agency must have hacked his computer to
obtain his IP address. JA38. Simultaneously, he conceded that he had no evidence
"that the only way to get [his] IP address was by unlawful means." JA40. Dugan
admitted that his IP address would have been broadcast to the first relay computer in
the Tor network, and he agreed that if the IP address was obtained from that first
computer, he would not have standing to contest that search. JA39-JA41. He also

10

admitted that tips from law enforcement agencies were presumptively reliable and that

past working relationships between law enforcement agencies bolstered an affidavit.

JA63. The district court indulged Dugan's argument to a point, but it concluded: "I

don't see any factual basis for what you are saying." JA43.

The district court repeatedly asked Dugan to distinguish this case from a case

where law enforcement relied on a tip from a known, reliable confidential informant.

JA40, JA48, JA50. Dugan's answers differed. JA41, JA48. He stated that he was not

challenging the reliability of the foreign law enforcement agency, and yet he reverted

back to his hacking theory. JA41, JA48.

Further, Dugan argued that the good faith exception pronounced in *United

States v. Leon*, 468 U.S. 897 (1984), did not apply because "the affidavit contained

materially false information that may have misled the magistrate into believing that

the user of the IP address" accessed CSAM. JA26-JA27; *see* JA50.

After hearing argument, the district court denied Dugan's motions. JA69. It

held that Dugan was not entitled to the information he sought to compel, JA53, JA65,

found that the affidavit provided a sufficient basis for a probable cause determination,

and concluded that the good faith exception applied, JA69-JA70. The district court

stated:

11

> The fact that the affidavit relies – or contains within it the information from the foreign law enforcement's site and that the officer relied upon that and the magistrate relied upon that is sufficient basis for probable cause to believe that the facts that he accessed the site for child pornography is very plausible and probable. It's improbable to believe he inadvertently accessed this site. . . . [E]ven if there were not sufficient evidence, the issuance of this warrant by a magistrate judge of this court, after review of the lengthy materials in the affidavit based on the foreign law enforcement agency's materials, is certainly sufficient for the officer to believe in good faith that the warrant was lawful. And there's no indication that the persons who executed the warrant had any reason to question the lawfulness or legitimacy of the warrant.

JA69-JA70.

### E. The United States supersedes the indictment, and a jury convicts Dugan.

On June 1, 2022, the United States filed a single-count superseding indictment, which charged Dugan with knowingly accessing with intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). JA86. He proceeded to trial on the superseding indictment on August 2, 2022, and he was convicted of the offense the same day. JA94-JA256.

### F. The district court orders Dugan to pay restitution to five victims as part of his sentence.

Dugan was sentenced to 54 months of imprisonment on October 27, 2022. JA312, JA342. The district court deferred ordering restitution at that time at defense

counsel's request. JA410-JA412. Following his sentencing, on November 9, 2022, Dugan filed a notice of appeal. JA367.

The United States submitted its first restitution memorandum on December 22, 2022, arguing that Dugan owed restitution to three victims. JA376, JA653, JA1038. Dugan responded on May 23, 2023, and objected to restitution to the victims in any amount above the statutory minimum of $3,000. JA394-JA398. The United States filed a second restitution memorandum on July 11, 2023, which included restitution requests for two more victims. JA400-JA408. In total, the United States asked the court to award restitution as follows: no less than $5,000 to "April," no less than $3,000 to "Jenny," $10,000 to "Maureen," $4,000 to "Patty," and $4,000 to "Moca."[4] JA407, JA1038. Each victim's damages were supported by ██████████ ████████████████████████ JA1038.

The district court held a restitution hearing on July 17, 2023. Dugan argued that he could "discern no consistent methodology, no explanation whatsoever" for the differences between restitution amounts between victims. JA414. In response, the United States explained:

---

[4] These names are pseudonyms that are generated by the National Center for Missing and Exploited Children for known victims.

13

> [E]ach of those [victim] submissions through their psychological evaluations, their victim impact statements, their doctor reports, they all tell the Court in different ways this: The defendant is part of the trade that continues their embarrassment, abuse and humiliation. If people like Raymond Dugan would stop looking at and collecting Moca's images, she wouldn't have to deal with this. She could get some closure. And that goes for all five victims.

JA415-JA416.

On July 18, 2023, the district court entered its restitution order. JA426. It awarded $7,000 to Jenny, $4,000 to Patty, $3,000 to Maureen, $5,000 to April, and $3,000 to Moca. JA428. The total amount of restitution was $22,000. JA428.

This Court entered a briefing schedule following the entry of the district court's restitution order. Order, No. 22-4642, ECF No. 30.

## SUMMARY OF ARGUMENT

On appeal, Dugan doubles down on an unproven theory he advanced below to suppress his admissions and the mountain of CSAM found on his hard drive. Without presenting any evidence to the district court, he argued that despite what the foreign law enforcement agency told HSI and what HSI relayed in the search warrant affidavit, the foreign law enforcement agency hacked into his computer to obtain his IP address. To attempt to secure suppression, he further argued that the foreign law enforcement agency was acting as an agent of the United States when it hacked his computer. His story is fiction, not fact.

The district court properly denied both Dugan's motion to compel and motion to suppress. His speculative theory is not enough to entitle him to discovery into the foreign law enforcement agency's investigation or its relationship with the United States. He failed to meet his burden to come forward with a cogent defense and specific facts that the United States possessed information that would be helpful to him. Likewise, the affidavit accurately summarized a presumptively reliable tip from a foreign law enforcement agency. Accordingly, it contained probable cause to search Dugan's home for evidence related to child pornography crimes. But even if the search warrant lacked probable cause, the district court properly applied the good faith exception.

The Court should also not disturb the district court's restitution order. The amounts awarded to three victims, Jenny, Patty, and April, were well supported and well within the district court's broad discretion to determine the appropriate compensation.

This Court should affirm.

## ARGUMENT

**I.　The district court properly denied Dugan's motion to compel.**

The district court did not err by denying Dugan's motion to compel. Dugan

failed to meet his burden to show that the discovery he sought to compel was material

to his defense under either Federal Rule of Criminal Procedure 16(a)(1)(E) or *Brady*

*v. Maryland*, 373 U.S. 83 (1963). For that reason, the district court's decision was

proper.

### a.　Standards of Review

This Court reviews a district court's denial of a motion to compel brought

under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure for abuse of

discretion. *United States v. Caro*, 597 F.3d 608, 616 (4th Cir. 2010). It reviews a district

court's denial of a motion to compel brought under *Brady v. Maryland*, 373 U.S. 83

(1963) *de novo* in the absence of factual findings. *Caro*, 597 F.3d at 616.

### b.　Dugan was not entitled to discover the information requested in his motion to compel.

*Brady* and Rule 16 are related but separate standards for discovery. *See Caro*,

597 F.3d at 619-20. *Brady* rests upon due process considerations and provides the

minimum amount of pretrial discovery granted in criminal cases. *Id.* at 621. According

to *Brady*, "the Due Process Clause requires the government to disclose 'evidence

17

favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment.'" *Caro*, 597 F.3d at 619 (quoting *Brady*, 373 U.S. at 87). "*Brady* requests cannot be used as discovery devices." *Id.* Where a defendant "can only speculate as to what the requested information might reveal, he cannot satisfy *Brady*'s requirement of showing that the requested evidence would be favorable to [the] accused." *Id.* at 619 (internal quotation marks omitted).

Rule 16 is broader than *Brady*. Under Rule 16, a defendant has a right to discovery "if the item is within the government's possession" and "the item is material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). "'[T]he defendant's defense' means the defendant's response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). To show materiality, the defendant has the burden to prove "some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *Caro*, 597 F.3d at 621 (internal quotation marks omitted).

Like *Brady*, mere speculation is insufficient to show materiality for purposes of Rule 16. *United States v. Hoeffener*, 950 F.3d 1037, 1043 (8th Cir. 2020) ("Materiality must be shown by more than mere speculation or conjecture."). In other words, the simple idea that information might exist and might help mount a suppression

18

challenge is not enough. *Cf. United States v. Soto-Zuniga*, 837 F.3d 992, 1001-02 (9th Cir. 2016) (allowing discovery for suppression motion only where defendant presented evidence to show that the Government possessed helpful information).

Instead, the defendant must come forward with a "***cogent defense***," *United States v. Owens*, 18 F.4th 928, 940 (7th Cir. 2021) (emphases added), supported by "***specific facts***, beyond allegations" *United States v. Santiago*, 46 F.3d 885, 895 (9th Cir. 1995) (emphases added), "which would tend to show that the Government is in possession of information helpful to the defense," *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). *See generally Owens*, 18 F.4th at 940 (collecting cases); *accord Soto-Zuniga*, 837 F.3d at 1001-02; *United States v. Budziak*, 697 F.3d 1105, 1111-13 (9th Cir. 2012). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." *Mandel*, 914 F.2d at 1219. In other words, the defendant cannot just guess. *See, e.g.*, *Hoeffener*, 950 F.3d at 1044 (holding that defendant's "mere speculation" that government's software accessed nonpublic portions of computer was insufficient to establish materiality). After all, Rule 16 does not authorize a shotgun approach to discovery. *United States v. Anderson*, 481 F.2d 685, 694 (4th Cir. 1973).

19

Below, Dugan's arguments were not rooted in any evidence. He asserted—based on his counsel's general "understanding of how Tor networks operate," JA49—that the foreign law enforcement agency must have accessed his computer in violation of the Fourth Amendment. JA38. He further theorized that the foreign law enforcement agency was acting as an agent of the United States when it entered his computer; he had to toss in this allegation, because otherwise, he would have had no grounds for suppression. JA63-64. This agency theory was based on his counsel's "independent[] reading" about past sting operations rather than any expert guidance regarding computer forensics. JA64-65.

These ideas amount to stacked hypotheses with no factual basis. Indeed, Dugan admitted that he had no evidence to show the "only way to get [his] IP address was by unlawful means." JA40. He also admitted that he shared his IP address with the first relay computer in the Tor network and that his IP address would be retrievable from that first relay computer. JA39-41. With respect to his agency theory, he fell back on the very affidavit he refused to believe and cherry-picked particular facts when it suited him. JA64. For example, to prove that the foreign law enforcement agency was an agent of the United States, Dugan pointed to the search warrant affidavit's statement that the foreign law enforcement agency had a history of working collaboratively with

20

United States law enforcement. JA64. But this collaboration, on its own, does not

suggest an agency relationship in the legal sense. *See United States v. Abu Ali*, 528 F.3d

210, 229 (4th Cir. 2008).

The only concrete evidence before the district court—the search warrant

affidavit and Agent Fleener's testimony at the pretrial motions hearing—weighed

heavily against Dugan's assertions. Critically, Agent Fleener averred in his affidavit

that ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ JA581-JA582. Agent Fleener also advised that ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ JA582. In fact, as Agent Fleener testified

during the pretrial motions hearing, the foreign law enforcement agency did not even

provide the details of its investigation to the United States. JA37. He also stated that

the United States did not have any information to provide regarding how the IP

address was obtained beyond what had already been produced in discovery. JA37. This

evidence makes clear that the information Dugan requested in his motion to compel

21

was not in the possession of the United States and that it is highly unlikely that such information would significantly alter the "quantum of proof" in Dugan's favor. *Caro*, 597 F.3d at 621.

Dugan's position turns the discovery standard on its head. Rule 16 provides defendants with a "shield," not a "sword" to conduct fantastical fieldtrips into the government's affairs. *Armstrong*, 517 U.S. at 462. He cannot speculate that a presumptively true statement in the affidavit might be false and then use Rule 16 to forage for information to impeach that very statement. As Dugan's counsel eloquently put it during the restitution hearing: "Courts are based on evidence. We have to have evidence." JA420.

Dugan's motion to compel plainly is a fishing expedition not authorized by Rule 16 or *Brady*.

## II.     The district court properly denied Dugan's motion to suppress.

This Court should affirm the district court's denial of Dugan's motion to suppress because Agent Fleener's search warrant affidavit contained ample information to support probable cause. And even if it did not, the good faith warrant exception applied.

22

### a. Standard of Review

When reviewing the denial of a motion to suppress, this Court reviews a district court's legal conclusions *de novo* and its factual findings for clear error, viewing the facts in the light most favorable to the United States. *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021). "Due weight" is afforded to "inferences drawn from those facts by resident judges and law enforcement officers." *Id.*

In assessing a probable cause determination of a magistrate judge, this Court applies "a deferential and pragmatic standard to determine whether the judge 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). To make this determination, it considers "only the facts presented in the warrant application." *Id.*

### b. The affidavit accurately described the tip and provided probable cause to search Dugan's home.

"Before searching a home, the government generally must obtain a warrant, supported by probable cause." *Bosyk*, 933 F.3d at 324-25; *see* U.S. Const. amend. IV. The probable cause inquiry entails "a practical, common-sense" evaluation of the facts recited in the affidavit to determine whether there is a "fair probability that contraband or evidence of a crime will be found." *Gates*, 462 U.S. at 238. The

23

probable cause standard is "not a high bar." *Bosyk*, 933 F.3d at 325. It does not "require officials to possess an airtight case before taking action." *Taylor v. Farmer*, 13 F.3d 117, 121 (4th Cir. 1993).

The affidavit here meets this basic probable cause threshold. The affidavit reported that according to ████████████████████████████ ████████████████████████████████████████████ JA580. ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████ JA580-JA581. The affidavit also explained that ███ ███████████████████████████████████████████████ JA582; ██████████████████████████████████████ JA583-JA584; ████████████████████████████████████████████████ JA583-JA584; ███████████████ ████████████████████████ JA584. The affidavit averred that ████████ ███████████████████████████████████████████████ ███████████ JA584. In addition, the affidavit demonstrated that ██████████████ ███████████████████████████████████████████████ █████████████████████████████ JA581. The affidavit also

24

included a ███████████████████████████████████

███████████████████ JA578-JA579.

That Agent Fleener did not independently verify the foreign law enforcement

agency's information or include the identity of the foreign law enforcement agency in

the affidavit is of no moment. Law enforcement officers routinely withhold

informants' identifiers in search warrant affidavits, and it is well established that

"probable cause can be based solely on information from a reliable, credible

informant." *United States v. Gondres-Medrano*, 3 F.4th 708, 717 (4th Cir. 2021) (internal

quotations omitted). Where the informant is a known fellow law enforcement agency,

the tip is presumptively reliable. *United States v. Hodge*, 354 F.3d 305, 311 n.1 (4th Cir.

2004) (citing *United States v. Ventresca*, 380 U.S. 102, 111 (1965)); *United States v. Yusuf*,

461 F.3d 374, 385 (3d Cir. 2006) ("[I]nformation received from other law

enforcement officials during the course of an investigation is generally presumed to

be reliable."). Dugan even admitted this in the district court. JA63. Of course, "a tip

from one federal law enforcement agency to another implies a degree of expertise and

a shared purpose in stopping illegal activity." *United States v. Benoit*, 730 F.3d 280, 285

(3d Cir. 2013) (quoting *United States v. Mathurin*, 561 F.3d 170, 176 (3d Cir. 2009)).

And where the foreign law enforcement agency has a "working relationship" with U.S.

partner agencies, the foreign agency's credibility is even further "bolster[ed]" since its "reputation can be assessed," and it "can be held responsible if its allegations turn out to be fabricated." *Id.* Dugan admitted this, too. JA63. Accordingly, probable cause existed even without identification of the foreign law enforcement agency's investigative techniques or independent verification of the tip's information.

Because the affidavit set forth probable cause, the district court correctly denied Dugan's motion to suppress.

### c. The good faith exception also applied.

Even if the court erred in its probable cause analysis, this Court should affirm for the independent reason that the good faith exception applied.[5] *See* JA69.

"[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," suppression is unwarranted even if "the magistrate's probable-cause determination" is later deemed to be deficient. *United States v. Leon*, 468 U.S. 897, 920 (1984). The good faith exception to the warrant requirement is inapplicable in only four circumstances: (1) "if the magistrate . . . was misled by information in an affidavit that the affiant knew

---

[5] When a case presents both probable cause and good faith issues, the Court may proceed directly to the good faith issue without addressing probable cause. *United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994).

was false"; (2) if the magistrate judge "wholly abandoned his judicial role"; (3) if the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) if the warrant is so facially deficient "that the executing officers cannot reasonably presume it to be valid." *United States v. Doyle*, 650 F.3d 460, 467 (4th Cir. 2011). The district court correctly determined that none of these circumstances applied to this case.

As a threshold matter, Dugan failed to raise his current two challenges to the application of the good faith exception below. JA50 (limiting argument to misleading the magistrate judge). For that reason, he has waived his arguments, and the Court should summarily affirm. *Bell v. Brockett*, 922 F.3d 502, 513 (4th Cir. 2019) ("Appellants may not raise arguments on appeal that were not first presented below to the district court."). If the Court considers the arguments forfeited, not waived, it should review the district court's application of the good faith exception for plain error. *United States v. Hope*, 28 F.4th 487, 493 (4th Cir. 2022) ("[C]laims not raised at the district court are forfeited and thus, limit appellate review to plain error.").

The district court did not plainly err when it found that there was "no indication that the persons who executed the warrant had any reason to question the lawfulness or legitimacy of the warrant." JA69-JA70. The 52-page affidavit includes

27

"indicia of a strong search warrant application." *United States v. Lewis*, 733 F. App'x

83, 86 (4th Cir. 2018), JA561-619. ███████████████████████████

███████████████████████████████████████████████████

█████████████████████ *Lewis*, 733 F. App'x at 86; JA561-JA562. ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ *Lewis*, 733 F.

App'x at 86; JA585-JA586. ████████████████████████████████

███████████████████████████████████████████████████

████████████████ JA580-JA586. █████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ *Lewis*, 733 F.

App'x at 86; JA580-JA586.

Accordingly, the good faith exception also applied and the motion to suppress

was properly denied.

## III.    The district court did not abuse its discretion by awarding more than $3,000 each to Jenny, Patty, and April.

This Court reviews a restitution order for abuse of discretion. *United States v.*

*Arce*, 49 F.4th 382, 396 (4th Cir. 2022). Here, the district court acted well within its

28

discretion in awarding $7,000 to Jenny, $4,000 to Patty, and $5,000 to April. In doing

so, the district court properly followed the requirements of 18 U.S.C. § 2259 and the

Supreme Court's guidance in *Paroline v. United States*, 572 U.S. 434 (2014).

"Fashioning appropriate restitution remedies for child-pornography victims is

not 'a precise mathematical inquiry and involves the use of discretion.'" *Arce*, 49 F.4th

at 396 (quoting *Paroline v. United States*, 572 U.S. 434, 459 (2014)). It is a "difficult"

and "an inherently imprecise task," and therefore, district courts are given "broad

discretion" when calculating and ordering restitution in this arena.  *Id.* at 396.

A sentencing court must, pursuant to 18 U.S.C. § 2259, order restitution for

offenses involving "sexual exploitation of children and child pornography in

particular." *Paroline*, 572 U.S. at 443. Restitution is "proper under § 2259 only to the

extent defendant's offense proximately caused a victim's loss." *Id.* at 448. If this

standard is satisfied, then the sentencing court must direct the defendant "to pay the

victim . . . the full amount of the victim's losses," which includes: (a) medical services

related to physical, psychiatric, or psychological care; (b) physical and occupational

therapy or rehabilitation; (c) necessary transportation, temporary housing, and child

care expenses; (d) lost income; (e) attorneys' fees and costs; and (f) any other losses

suffered by the victim as a proximate result of the offense. 18 U.S.C. § 2259(b)(1),

(c)(2). The United States bears the burden of proving by a preponderance of the evidence "the amount of the loss sustained by a victim as a result of" the defendant's crime. 18 U.S.C. § 3664(e). But in any case, the court must award at least $3,000 to each victim. 18 U.S.C. § 2259(b)(2)(B).

In *Paroline*, the Supreme Court encouraged lower courts to, "as a starting point, determine the amount of the victim's losses [and] then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." 572 U.S. at 460. The *Paroline* factors are "suggestions rather than prerequisites," *United States v. Dillard*, 891 F.3d 151, 161 (4th Cir. 2018), and include "the number of past criminal defendants found to have contributed to the victim's general losses," "whether the defendant reproduced or distributed images of the victim," and "how many images of the victim the defendant possessed," among other factors relative to the defendant's "causal role" in the offense, *id.* at 160.

Dugan takes issue with the amounts awarded to Jenny, Patty, and April above the statutory minimum of $3,000. Op. Br. 30-31. In total, Dugan contests $7,000 of his $22,000 restitution order. *Id.* The evidence below, which was reviewed and

30

considered by the district court, demonstrates that Jenny, Patty, and April were clearly entitled to their restitution awards.



32



33



34

Dugan's causal role in these victims' losses cannot be understated. Those who consume child pornography "enable and support the continued production of child pornography." *United States v. McDaniel*, 631 F.3d 1204, 1208 (11th Cir. 2011). The consumers "provide the economic incentive for the creation and distribution of the pornography, and the end users violate the child's privacy by possessing their image." *Id.* Put simply, as long as there is demand, there will be a supply. As long as there is supply, there will be victims, whose pain is ongoing. U.S. Sent'g Comm'n, *Report to Congress: Federal Child Pornography Offenses* 112 (December 2012), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf ("Child pornography victims face other types of victimization that are separate from the harm of production. Even after physical abuse has ended, child pornography victims suffer due to continued circulation of their images or the ongoing potential for circulation of their images."). By accessing his victims' images, Dugan fueled the beast that tortures Jenny, Patty, and April daily.

The district court here did exactly what *Paroline* demands: it did its "best" to apply the statute and administer justice for the victims. *Paroline*, 571 U.S. at 462 ("But courts can only do their best to apply the statute as written in a workable manner,

35

faithful to the competing principles at stake: that victims should be compensated and that defendants should be held to account . . . ."); JA423 ("Well, I'm just going to do the best I can with what you all gave me. And it's not going to be adequate. It's just that simple. We're just going to do the best we can."). The restitution awards were within its broad discretion. This Court should affirm the restitution order.

## CONCLUSION

For the foregoing reasons, this Court should affirm the decisions of the district court.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney


By:    s/Holly J. Wilson
       HOLLY J. WILSON
       Assistant United States Attorney

36

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 7608 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because the brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2016 in 14-point Goudy Old Style.

s/Holly J. Wilson_____
HOLLY J. WILSON
Assistant United States Attorney
Attorney for the United States

Date:     October 24, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 24, 2023, I electronically filed the foregoing

"BRIEF OF APPELLEE THE UNITED STATES OF AMERICA" with the Clerk of

court using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF user:

Ms. Shawn A. Morgan, Esquire
Steptoe & Johnson, PLLC
400 White Oaks Boulevard
Bridgeport, West Virginia 26330
Tel: (304) 933-8119
Email: Shawn.Morgan@Steptoe-Johnson.com

s/Holly J. Wilson
HOLLY J. WILSON
Assistant United States Attorney
Attorney for the United States